In the Matter of Paul R. REED, a member of the Bar of the Supreme Court of Delaware.

Supreme Court of Delaware.

Submitted Jan. 3, 1977.

Decided Jan. 18, 1977.

Henry N. Herndon, Jr., Wilmington, and Jackson R. Dunlap, Jr., Georgetown, for the Censor Committee.

Respondent, pro se.

Before HERRMANN, C. J., DUFFY and McNEILLY, JJ.

PER CURIAM:

The Censor Committee of this Court reported the respondent, Paul R. Reed, a member of the Delaware Bar, for disciplinary action upon the basis of its following findings of fact and conclusions of law:

I.

"1. On or about February 25, 1975, the Respondent received funds from or on behalf of his client, Robert J. Reed, the Administrator of the Estate of Susie Reed, in the sum of Three Thousand Two Hundred Ninety-Four Dollars and Fourteen Cents ($3,294.14) consisting of the proceeds of a real estate settlement of properties belonging to the said Estate. The funds were deposited in an escrow or trust funds account entitled 'Lawyers Title of Sussex County, Inc.' with the Wilmington Trust Company at Georgetown, Delaware.

"2. On or about February 25, 1975, the Respondent made authorized withdrawals from the Trust funds held on behalf of the said Estate in the amount of Two Hundred Twenty-Nine Dollars and Thirty-Four Cents ($229.34). The balance of Three Thousand Sixty-Four Dollars and Eighty Cents ($3,064.80) continued to be held in the above mentioned escrow account.

"3. On or about April 2, 1975, the Respondent transferred the balance of the funds being held on behalf of the Susie Reed Estate to an escrow account entitled 'Commonwealth of Sussex, Inc.', being an account with Farmers Bank at Georgetown, Delaware.

"4. Thereafter, the Respondent closed out the Commonwealth of Sussex, Inc. account on or about November 14, 1975, and transferred the balance of funds remaining in that account in the amount of One Thousand Three Hundred Thirty-Eight Dollars and Sixty-Two Cents ($1,338.62) to an account entitled 'Abstract and Land Title Company Escrow Account' with Farmers Bank of the State of Delaware. At the time of closing this account, the Respondent should have been holding funds in at least the amount of Three Thousand Sixty-Four Dollars and Eighty Cents ($3,064.80) on behalf of the Susie Reed Estate.

"5. Thereafter, in December of 1975, Mr. Robert Reed the Administrator of the Estate of Susie Reed contacted the Respondent and inquired as to when the funds would be paid to the duly entitled recipients. The Respondent testified that he then wrote a letter to the said Robert Reed directing him to go ahead and distribute the said monies, said advice having been given by the Respondent under the mistaken impression that the funds belonging to the estate had been distributed to the administrator.

"6. Thereafter, the Complainant, Robert Reed, contacted the Censor Committee, and after a letter from the Censor Committee, Respondent delivered to Robert Reed, from an account entitled 'Paul R. Reed Collections Escrow Account', a check in the amount of $3,604.-80.

"7. The Respondent admitted at hearing that he had made three (3) substantial disbursements from his real estate settlement escrow accounts during prior years on behalf of clients who had not deposited with him sums to cover such disbursements. He testified that two (2) of these so-called over-disbursements had been repaid in full but that the largest

amount, which was approximately Nine Thousand Nine Hundred Ninety-Nine Dollars and Sixty-Five Cents ($9,999.65) and which had existed since 1973, had not been repaid at the date of the Committee hearing, although a judgment had been obtained against the client who owed the monies.

"8. The Respondent testified that the over-disbursement in the amount of Nine Thousand Nine Hundred Ninety-Nine Dollars and Sixty-Five Cents ($9,999.65) had resulted from a mechanic's lien which had been paid off on behalf of a client with the specific understanding that the client would reimburse the monies to the Respondent's trust account. This occurred in 1973 and Respondent testified that the monies had never been repaid and that his escrow account had been continually short because of the said overdisbursement.

1. DR 9–102 of the Delaware Lawyer's Code of Professional Responsibility provides:
"DR. 9–102. *Preserving Identity of Funds and Property of a Client.*
"(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
"(1) Funds reasonably sufficient to pay bank charges may be deposited therein.
"(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
"(B) A lawyer shall:
"(1) Promptly notify a client of the receipt of his funds, securities, or other properties.
"(2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe de-

*"Conclusions of Law:*

"1. By reason of the conduct described in the Findings of Fact, Respondent has violated DR 9–102 of the Code of Professional Responsibility [1] in failing to maintain and preserve on hand all monies which he was supposed to be holding on behalf of the Estate of Susie Reed or others.

"2. By reason of the conduct described above, the Committee found that the financial records of Respondent, as produced to the Committee, were inadequate to explain the flow of the escrowed monies which he was supposed to be holding on behalf of other clients and the availability of funds to pay the amount owed to such clients.

"3. By reason of the conduct described above, the Respondent was found to have been in violation of the Court's Interpretive Guideline, numbered 2,* un-

posit box or other place of safe keeping as soon as practicable.
"(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
"(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."

* Interpretive Guideline No. 2 of the Delaware Lawyer's Code of Professional Responsibility provides in pertinent part:
"INTERPRETIVE GUIDELINE NO. 2—RE: PRESERVING IDENTITY OF FUNDS AND PROPERTY OF CLIENT
"The following statements of principles are promulgated as interpretive guidelines in the application of Disciplinary Rule 9–102 of the Delaware Lawyer's Code of Professional Responsibility:
"(a) As a minimum requirement, every attorney engaged in the private practice of law in the State of Delaware (hereinafter 'Attorney') shall maintain on a current basis books and records which establish his compliance with DR 9–102, and which shall be preserved for at least five years following the completion of the year to which they relate, or, as to fiduciary or trust records,

der DR 9–102 and of his certification of compliance to the Supreme Court of the State of Delaware on May 31, 1975, in that he was not, at that date, main-

five years following the completion of that fiduciary obligation. For this purpose, the following books and records, or their equivalent, are suggested:

"NONFIDUCIARY FUNDS

"(1) A cash receipts journal reflecting monies received on his own account such as fees received and other nontrust receipts. The receipts journal should identify the source of the receipt and show the date of the receipt. Receipts should be deposited intact and the duplicate deposit slip should be sufficiently detailed to identify each item.

"(2) A cash disbursements journal reflecting monies disbursed on his own account for overhead and other expenditures.

"(3) A record in the form of a fees book or file of copies of billing invoices reflecting all fees charged and other billings to clients (preferably pre-numbered invoices).

"(4) Bank statements, cancelled checks, and duplicate deposit slips.

"(5) A reconciliation of the cash balance derived from the cash receipts and disbursement journal totals, the check book balance and the bank statement balance at least quarterly (preferably monthly).

\* \* \*

"FIDUCIARY FUNDS (Including all funds held for clients or others):

"(1) A cash receipts journal (separate from the nonfiduciary funds journal) listing the sources of the receipt and the date of the receipt. Receipts should be deposited intact and the duplicate deposit slip should be sufficiently detailed to identify each item.

"(2) A disbursements journal listing the date of the disbursement and payee. All disbursements are to be made by check.

"(3) A subsidiary ledger containing a separate page for each person or company for whom monies have been received in trust showing the date of the receipt and the amount, the date of the disbursement and the amount, and any unexpended balance.

"(4) A monthly trial balance of the subsidiary ledger showing the name of the client and the balance of the client's account at the end of each month.

"(a) The total of the monthly trial balance should agree with the control figure computed by taking the beginning balance, adding the total of monies received in the trust for the month and deducting the total of monies disbursed for the month.

"(b) Monies disbursed for a client which exceed monies received must be explained.

"(5) A monthly reconciliation at month-end of the cash balance derived from the cash receipts and cash disbursement journal totals, the check book balance, the bank statement balance, and the subsidiary ledger trial balance total.

"(6) Bank statements, cancelled checks, and duplicate deposit slips.

"(7) A record showing all property, specifically identified, other than cash, held in trust from time to time for clients or others.

"(8) As to real estate bank accounts, where separately maintained, it will be sufficient if they are reconciled each month, and a list of escrow funds held therein is maintained, reflecting the amounts held therein, the person for whom held, and the purpose for which held.

"(b) On or before May 31, 1975, each Attorney shall file with the Trustees of the Clients' Security Trust Fund of the Bar of Delaware (hereinafter 'Trustees') a certificate and respond to a questionnaire as follows:

"(1) The certificate shall state that:

'I have read the Delaware Lawyer's Code of Professional Responsibility and have noted DR 9–102 and the guideline relating thereto. I am complying with the DR 9–102 and its guideline.'

\* \* \*

"(c) On on before May 31, 1976, each Attorney shall respond to a similar questionnaire, and file a similar certificate with the Trustees. This second certificate and the questionnaire shall relate to the entire preceding 12 month period or calendar year. A similar certificate and questionnaire shall be completed and filed with the Trustees on or before May 31 of each year thereafter by each Attorney. Any attorney having filed a certificate pursuant to paragraph E hereof shall file a certificate pursuant to this paragraph within 30 days after paragraph E becomes inapplicable.

"(d) Books of account and records of every Attorney are subject to examination by a person or firm, engaged and directed by the Trustees, for the purpose of verifying the accuracy of certificates filed by the Attorney. Such examination shall be conducted so as to preserve the private and confidential nature of the Attorney's records insofar as is consistent with this Guideline, Supreme Court Rules and Censor Committee Rules."

\* \* \*

taining on hand all monies which he was supposed to be holding on behalf of clients."

## II.

Upon the return of rule to show cause why he should not be subjected to disciplinary action, the Court heard the respondent's oral statement and considered his written statement. Thereupon, the Court ordered that an audit of the books and records of the respondent be made under the direction of the Trustees of the Clients' Security Trust Fund by a public accountant selected by the Trustees; that the audit be limited to the books, records, and purposes set forth in Interpretive Guideline No. 2, and be made at the expense of the respondent.

The audit report thus made was summarized by the Censor Committee as follows:

"1. The Audit Report reflects that $3,752.27 constituted funds due the respondent's clients at June 30, 1976, for which there was no escrow account. The non-fiduciary account balances of the respondent on the same day aggregated $471.58.

"2. With respect to the respondent's existing escrow accounts, the balances due clients on June 30 and July 30, 1976, aggregated $31,392.19. Subject to a possible $48.18 error in one account, the balances in these accounts on the same dates totalled $11,642.75. The difference of $19,749.44 was advanced to or on behalf of clients other than those for whom funds were to have been held in escrow.

"3. The aggregate amount due clients for which there is either no escrow account or a shortage in existing escrow accounts is $23,501.71, which exceeds the $9,999.65 due from one client that is referred to in paragraphs 7 and 8 of the Committee's Report.

"4. The Audit Report confirms the conclusions of Law set forth in the Committee's Report."

In response to the audit report, the respondent reported to the Court that he had "arranged to deposit personal funds obtained by a loan to cover the sums due escrow accounts for funds due from other clients"; and that he had arranged to bring his books and records into compliance. A supplementary audit report dated December 29, 1976, confirmed that the respondent "had deposited funds to cover all the amounts due to the various escrow accounts", as of November 9, 1976; but that, as of that date, there "was no evidence of reconciliation of cash recipts, cash disbursements, or ending cash balances with the checkbook balances for the non-fiduciary fund."

## III.

We conclude that the respondent has been guilty of unprofessional conduct in that he has violated Disciplinary Rule 9–102 and Interpretive Guideline No. 2 of the Delaware Lawyer's Code of Professional Responsibility.

Upon due consideration of the Report of the Censor Committee, the oral and written statements of the respondent, and the audit reports made pursuant to the Order of this Court, it is adjudged and ordered that the respondent be disciplined as follows:

(1) The publication of this opinion shall constitute a public censure of the respondent; and

(2) The respondent shall forfeit and pay a fine of $5,000. to be paid over, not later than February 15, 1977, to the Trustees of the Clients' Security Trust Fund of the Bar of the State of Delaware.

In determining the appropriate disciplinary action to be taken in this case, the Court has taken into consideration the fact that the record indicates that no client or other person has sustained loss by reason of the respondent's non-compliance with the rules involved.

This opinion and judgment covers the period ending November 10, 1976.