**In re Paul R. REED, a member of the Bar of the Supreme Court of the State of Delaware, Respondent.**

Supreme Court of Delaware.

Submitted Sept. 19, 1978.

Decided Nov. 1, 1978.

F. L. Peter Stone, of Connolly, Bove & Lodge, Wilmington, for respondent.

Jackson R. Dunlap, Jr., Georgetown, for the Censor Committee.

Before HERRMANN, C. J., DUFFY and McNEILLY, JJ.

PER CURIAM:

The Censor Committee, created by Rule 62 of this Court, has recommended that disciplinary action be taken against Paul R. Reed, a member of the Delaware Bar (Respondent) upon the basis of the following findings of fact and conclusions of law:

*Findings of Fact*

"1. The following allegations of paragraphs 2A, B, D, and E of the Order to Show Cause herein were stipulated to be true by Respondent Paul R. Reed at the hearing herein, and the balance of the allegations of paragraph 2B were withdrawn:

"(a) As agent for Commonwealth Land Title Insurance Company, Respondent issued a title insurance policy number 401–13873 to Alvin Solomon and other named insureds on August 6, 1975 to insure a mortgage from Fenwick West, Inc. to Alvin Solomon, et al., for the face value of the mortgage of $125,000.00, which mortgage covered a parcel of real estate in Sussex County, Delaware.

"(b) The foregoing title policy did not contain any exception as to any prior liens upon the lands referred to in the title insurance policy when in fact there was a prior lien against the real estate consisting of a mortgage of Madison M. Gray, et ux, to Earl C. Dryden dated May 9, 1975 in the amount of $36,000.00.

"(c) As agent for Commonwealth Land Title Insurance Company on August 25, 1976 Respondent issued a title insurance policy 401–138778 to Colonial Mortgage Investors for $400,000.00 to insure a mortgage of Fenwick Commercial Limited Partnership to Colonial Mortgage Investors on a parcel of real property in Sussex County, Delaware.

"(d) The title policy on this parcel did not contain any exception for two existing mortgages constituting liens on the insured real estate which were (1) a mortgage of Madison M. Gray and Cathryn B. Gray to Nathaniel R. Wootten dated June 27, 1974 in the amount of $100,000.00 and recorded in The Office of The Recorder of Deeds, Sussex County, in Mortgage Book 302, page 802, and (2) a mortgage of Lighthouse Diner, Inc. to James M. Elliott in the amount of $80,000.00 and recorded in The Office of The Recorder of Deeds, Sussex County, in Mortgage Book 303, page 661.

"2. Independently of that stipulation, or in addition thereto, the following facts were found to be true.

"3. On August 6, 1975, Respondent, as agent for Commonwealth Land Title Insurance Company, issued a title insurance policy # 401–13873 in the amount of $125,000.00 to Alvin Solomon, Harold Solomon, Gershan K. Thiman, Jules E. Blitz, Melvyn Pugatch, Ira M. Rosenzwog, Leonard Golomeek, and Seymour Sussman, to insure a mortgage granted to them by Fenwick West, Inc. dated August 6, 1975 on real estate situated in Baltimore Hundred, Sussex County, Delaware. The mortgage was recorded in The Office of The Recorder of Deeds, Sussex County, in Mortgage Book 316, page 201 on August 6, 1975.

"4. The title policy # 401–13873 did not contain an exception for the prior lien, on the parcel referred to in paragraph 3 hereof, of a mortgage of Madison M. Gray and Cathryn B. Gray to Earl C. Dryden dated May 9, 1975 in the amount of $36,000.00 which was recorded in The Office of The Recorder of Deeds, Sussex County, on May 19, 1975 in Mortgage Book 313, page 511. The Respondent testified that he had prepared this mortgage. Furthermore, Madison M. Gray was President of Fenwick West, Inc. and executed the 'Solomon' mortgage for it.

"5. Subsequent to the issuance of title policy # 401–13873, the Mortgagor, Fenwick West, Inc. defaulted on its mortgage. The Mortgagees foreclosed on the mortgage, got judgment and issued execution. Further proceedings in the matter are, however, stayed. It was not until the foreclosure procedure was commenced that the Mortgagees learned of the prior 'Dryden' lien. Thereafter, the Mortgagee's attorney gave notice to the title company to honor its insurance commitments to them.

"6. The Respondent at all times hereinabove referred to was acting as attorney for Madison M. and Cathryn B. Gray and for Fenwick West, Inc., a corporation in which the Grays were interested, and knew that the lien of the 'Dryden' mortgage existed and was prior in time to the lien of the 'Solomon' mortgage at the time he issued title policy # 401–13873.

"7. It was the responsibility of the Respondent to inform the title company of the existence of the lien of the 'Dryden' mortgage in respect to insuring the 'Solomon' mortgage and to make an exception to the lien of the 'Dryden' mortgage in title policy # 401–13873.

"8. On August 25, 1976, Respondent, as agent for Commonwealth Land Title Insurance Company, issued a title insurance policy # 401–138778 in the amount of $400,000.00 to Colonial Mortgage Investors to insure a mortgage granted to it by Fenwick Commercial Limited Partnership dated August 24, 1976 on real estate held by it in fee simple in Baltimore Hundred, Sussex County, Delaware. The mortgage was recorded in The Office of The Recorder of Deeds, Sussex County, in Mortgage Book 361, page 155 on August 25, 1976.

"9. The aforementioned policy # 401–138778 did not contain any exception for two existing mortgages constituting prior liens on the insured real estate which were, (1) a mortgage of Madison M. Gray and Cathryn B. Gray to Nathaniel R. Wootten dated June 27, 1974 in the amount of $100,000.00 and recorded in The Office of The Recorder of Deeds, Sussex County, in Mortgage Book 302, page 802, and (2) a mortgage of Lighthouse Diner, Inc. to James M. Elliott in the amount of $80,000.00 and recorded in The Office of The Recorder of Deeds, Sussex County, in Mortgage Book 303, page 661. The Respondent stipulated at the hearing that he prepared these two mortgages.

"10. Fenwick Commercial Limited Partnership had obtained title in fee simple to the real estate covered by the 'Colonial' mortgage consisting of several tracts by two deeds, (1) by deed of Madison M. Gray and Cathryn B. Gray, his wife, dated November 30, 1975 and recorded in The Office of The Recorder of Deeds, Sussex County, April 14, 1976 in Deed Book 784, page 293, and (2) by deed of Lighthouse Diner, Inc. dated November 30, 1975 and recorded April 14, 1976 in the aforesaid Recorder's Office in Deed Book 784, page 295. Madison M. Gray signed the Lighthouse Diner, Inc. deed as President.

"11. It was the responsibility of the Respondent to make an exception for the liens of the two mortgages referred to in paragraph 9 in title policy # 401–138778.

"12. The Respondent at all times hereinabove referred to was not only acting as attorney for the Grays but was also acting as attorney for Fenwick Commercial Limited Partnership and Lighthouse Diner, Inc., enterprises in which the Grays were interested. Respondent acknowledged at the hearing that he issued a title binder to 'Colonial' in December 1975 which indicated and identified the mortgages referred to in paragraph 9 as liens. Respondent knew the lien of the two mortgages referred to in paragraph 9 existed and were mortgage liens prior in time to the lien of the 'Colonial' mortgage at the time he issued policy # 401–138778.

"13. Nathaniel R. Wootten has commenced foreclosure proceedings against Madison M. Gray. That matter is pending in the Superior Court, Sussex County.

"14. The provisions of each of the aforementioned title policies did, among other things, insure against the priority of any lien or encumbrance over the lien of the insured mortgage unless excluded or excepted in the Schedule B of the policy.

"15. The Respondent, under an Opinion of the Court dated January 18, 1977 in Case No. 97, 1976 has been disciplined by this Court.

"16. The Respondent, pursuant to Rule 32(2)(aa) of the Court was issued a private censure by the Committee in Case No. 297 on December 3, 1973.

"17. The Respondent, pursuant to Rule 32(2)(aa) of the Court was issued a private censure by the Committee in Case No. 441 on December 30, 1975."

1. DR1–102(A)(4) provides:
"(A) A lawyer shall not:

.  .  .  .  .

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

2. DR6–101(A)(3) provides:
"(A) A lawyer shall not:

.  .  .  .  .

## Conclusions of Law

"1. Respondent has violated DR1–102(A)(4)[1] of the Delaware Lawyer's Code of Professional Responsibility by engaging in conduct involving misrepresentation as follows:

"(a) As agent for Commonwealth Land Title Insurance Company, he issued a title insurance policy # 401–13873 in the amount of $125,000.00 without making an exception for a prior lien of a mortgage of Madison M. Gray, et ux, to Earl C. Dryden when he knew of its existence and it was his professional obligation to inform Commonwealth of such fact and to make an exception for the lien of that mortgage in the title policy.

"(b) As agent for Commonwealth Land Title Insurance Company, he issued a title insurance policy # 401–138778 in the amount of $400,000.00 without making an exception for two existing mortgages constituting liens on the insured real estate which were, (1) a mortgage of Madison M. Gray, et ux to Nathaniel P. Wootten, and (2) a mortgage of Lighthouse Diner, Inc. to James M. Elliott, when he knew of their existence and it was his professional obligation to inform Commonwealth of such facts and to make exception for the liens of those mortgages in the title policy.

"2. Respondent has violated DR6–101(A)(3)[2] of the Delaware Lawyer's Code of Professional Responsibility by neglecting a legal matter entrusted to him.

"3. Respondent has violated DR7–101(A)(3)[3] of the Delaware Lawyer's Code of Professional Responsibility in that he intentionally prejudiced his client during the course of his professional relationship as follows:

(3) Neglect a legal matter entrusted to him."

3. DR7–101(A)(3) provides:
"(A) A lawyer shall not intentionally:

.  .  .  .  .

(3) Prejudice or damage his client during the course of the professional relationship, except as required under DR7–102(B)."

"(a) As agent for Commonwealth Land Title Insurance Company, he issued a title insurance policy # 401–13873 August 6, 1975 in the amount of $125,000.00 to insure a mortgage granted to Alvin Solomon, et al. by Fenwick West, Inc. in which he knowingly did not except the lien of a mortgage of Madison M. Gray, et ux, to Earl C. Dryden in the amount of $36,000.00 dated May 9, 1975, and duly recorded in The Office of The Recorder of Deeds May 19, 1975.

"(b) The provisions of title insurance policy # 401–13873 did, among other things, insure against loss or damage sustained by virtue of the priority of any lien over the insured mortgage. The issuance of the title policy by Respondent to Alvin Solomon, et al for $125,000.00 to insure the mortgage of Fenwick West, Inc. without making an exception for the lien of a prior mortgage on the insured real estate dated and recorded in The Office of The Recorder of Deeds prior in time to the insured mortgage has prejudiced Commonwealth by exposing it to a risk of loss by virtue of the prior lien.

"(c) As agent for Commonwealth, he issued a title insurance policy # 401–138778 August 25, 1976 in the amount of $400,-000.00 to insure a mortgage granted to Colonial Mortgage Investors by Fenwick Commercial Limited Partnership in which he knowingly did not except the lien of the two existing mortgages constituting liens on the insured real estate which were, (1) a mortgage of Madison M. Gray, et ux to Nathaniel R. Wootten in the amount of $100,000.00, and (2) a mortgage of Lighthouse Diner, Inc. to James W. Elliott in the amount of $80,000.00.

"(d) The provisions of title insurance policy # 401–138778 did, among other things, insure against loss or damage sustained by virtue of the priority of any lien over the insured mortgage. The issuance of the title policy by Respondent to Colonial Mortgage Investors for $400,000.00 to insure the mortgage of Fenwick Commercial Limited Partnership without making an exception to the liens of the two mortgages on the insured real estate dated and recorded in The Office of The Recorder of Deeds prior in time to the insured mortgages has prejudiced Commonwealth to the limits of its policy.

"4. Respondent has violated DR7–102(A)(3) [4] of the Delaware Lawyer's Code of Professional Responsibility in that he knowingly failed to disclose that which he was required by law to reveal in the representation of his client as follows:

"(a) The conclusions stated in 3(a), (b), (c), and (d) are incorporated herein by reference.

"(b) It was his professional obligation to Commonwealth to disclose the existence of liens on the property insured in title insurance policies # 401–138778 and # 401–13873 which had a priority of a lien over the lien of the insured mortgages and of which he had knowledge.

"5. The Respondent has violated DR7–102(A)(5) [5] of the Delaware Lawyer's Code of Professional Responsibility in that he knowingly made a false statement of fact in his representation of a client as follows:

"(a) The conclusions stated in paragraphs 3(a), (b), (c), (d), and 4(b) are incorporated herein by reference.

"(b) His issuance of title insurance policies # 401–138778 and # 401–13873, knowingly omitting the exceptions to the lien of mortgages that had a priority over the liens of the respective insured mortgages, falsely stated the status of the insured mortgages.

"6. The Respondent has engaged in conduct that adversely reflects upon his fitness to practice law in violation of DR1–102[(A)](6), [6] as follows:

4. DR7–102(A)(3) provides:

"(A) In his representation of a client, a lawyer shall not:

(3) Conceal or knowingly fail to disclose that which he is required by law to reveal."

5. DR7–102(A)(5) provides:

"(A) In his representation of a client, a lawyer shall not:

(5) Knowingly make a false statement of law or fact."

6. DR1–102(A)(6) provides:

"(A) A lawyer shall not:

(6) Engage in any other conduct that adversely reflects on his fitness to practice law."

"(a) The Respondent, under an Opinion of the Court dated January 18, 1977 in Case No. 97, 1976 has been disciplined by this Court.

"(b) The Respondent, pursuant to Rule 32(2)(aa) of the Court was issued a private censure by the Committee in Case No. 297 on December 3, 1973.

"(c) The Respondent, pursuant to Rule 32(2)(aa) of the Court was issued a private censure by the Committee in Case No. 441 on December 30, 1975.

"(d) The prior conduct of the Respondent together with the facts found and conclusions reached in this proceeding show a course of conduct that reflect adversely upon his fitness to practice law."

The Respondent filed exceptions, see Rule 64, to certain findings of fact, including: Item 4 because the mortgage was prepared by his "office," not by him personally; Item 6 because omission of the Dryden mortgage resulted from failure to discover a lien in the judgment docket and not from a deliberate act; and Items 15, 16 and 17 because they are irrelevant.

Exceptions were also filed to the Committee's conclusions of law because, the Respondent argues, the facts show mistake, not intentional conduct, and ordinary negligence should not be the basis for discipline.

The Court issued upon the Respondent a rule to show cause why discipline should not be administered, see Rule 64, and at the return of the rule, counsel for the Committee and the Respondent were heard.

I

After considering all contentions of the parties and the record before us, we make the following rulings on the conclusions of law stated by the Committee:

(1) *As to Item 1:* This is affirmed in all respects. As to the Wootten mortgage, the Respondent has admitted that he knew of its existence at the time the title policy was issued and, as to the Dryden mortgage, there is a convincing preponderance of evidence in the record, *In re Morford,* Del.

Supr., 80 A.2d 429, 432 (1951), to support the Committee's implicit finding that the Respondent also knew of its existence when the title policy was issued. Compare *In re Autman,* Del.Supr., 331 A.2d 150 (1975). We approve the Committee's conclusion that the Respondent had a professional obligation, under DR1–102(A)(4), to inform the title company of the respective facts and his failure to do so was a misrepresentation under the circumstances, in each case.

(2) *As to Item 2:* The Respondent's exception is sustained because, on the record before us, this is a case of misrepresentation, not neglect.

(3) *As to Items 3, 4 and 5:* It is unnecessary to consider these in view of our ruling on misrepresentation. See Item (1) above. Thus, we do not reach these Items.

(4) *As to Item 6:* We agree with the Respondent's contention that this Item should not be considered in determining what ruling should be made on the merits of the Report and the Exceptions before us in this case. Therefore, the exception to this Item is sustained.

II

While we do not consider the Respondent's prior conduct in determining the rulings to be made on the merits of the Report and the Exceptions, we can and must consider such conduct in fixing appropriate discipline.

The Censor Committee of this Court has, pursuant to Supreme Court Rule 63(d), issued two private censures to the Respondent within the past five years. In addition, this Court imposed a $5,000 fine on him just last year. See *Matter of Reed,* 369 A.2d 686 (1977). Given the findings in this case as to intentional misrepresentations and the Respondent's prior record, we conclude that this reflects a course of conduct for which nothing less than a suspension is appropriate. Accordingly, it is hereby adjudged and ordered that the Respondent be disciplined as follows:

(1) That the Respondent be prohibited from engaging in the private practice of the

law as a member of the Delaware Bar for a period of six (6) months, commencing on the First day of December, 1978, and ending on the First day of June, 1979; and·

(2) That during such period, the Respondent shall not (a) share in any legal fees arising from clients or cases referred by the Respondent during the period of suspension to any other attorney, or (b) share in any legal fees earned for services by others during such period of suspension; and

(3) That the Respondent shall arrange with another member of the Delaware Bar to protect the interests of any clients of the Respondent during the period of suspension; and shall submit to this Court on or before November 15, 1978, a certificate of compliance with this paragraph, co-signed by the attorney who has undertaken the said assignment. Compare *Matter of Reardon*, Del.Supr., 369 A.2d 666 (1977).